UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SECURE ENERGY, INC., | ) |
|     Plaintiff, | ) |
| v. | ) No. 4:11CV1636 TIA |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Philadelphia Indemnity Insurance Company's Motion for Summary Judgment (Doc. No. 47). The parties consented to the jurisdiction of the undersigned pursuant to U.S.C. § 636(c). After thorough consideration of the motion and the responses thereto, the undersigned will grant Defendant's motion for summary judgment.

### Background

This case stems from several insurance policies issued to Plaintiff Secure Energy, Inc. ("Secure Energy") by Defendant Philadelphia Indemnity Insurance Company ("PIIC"). PIIC insured Secure Energy from October 11, 2007 to October 11, 2012 through annual policies for D & O Liability coverage and Employment Practices coverage. (Def.'s Statement of Uncontroverted Material Facts ["SOF"] ¶ 35, ECF No. 49) Each policy applies on a "claims made" basis. (Id. at ¶¶ 35-36) To fall within the insuring agreement of a particular policy, the insured must provide notice of a claim to PIIC as practicable after becoming aware of the claim but not later than 60 days after the expiration date of that policy. (Id. at ¶ 41)

On December 28, 2007, Secure Energy's Board of Directors received a memorandum from Michael McMurtrey requesting commissions he was allegedly owed. (Id. at ¶¶ 1-2; Pl.'s Response to SOF ¶ 1, ECF No. 53) Mr. McMurtrey filed a lawsuit seeking commissions against Kenny Securities Corp. and John Kenny, a director and founder of Secure Energy and founder of Kenny Securities Crop. on May 16, 2008. (Def.'s SOF ¶¶ 8-9) On or about April 13, 2009, Secure Energy was added as a defendant in the 2008 lawsuit. (Id. at ¶ 10) Mr. McMurtrey sought to recover $1.8 million in commissions and $2 million in punitive damages. (Id. at ¶ 12) On June 25, 2009, Mr. McMurtrey voluntarily dismissed his suit but re-filed against the same defendants on July 8, 2009. (Id. at ¶¶ 19-21) Mr. McMurtrey alleged breach of contract, unjust enrichment, fraud, negligent misrepresentation, and conspiracy against Secure Energy, and requested the same amount of damages as in the earlier lawsuit. (Id. at ¶¶ 25-26) Mr. McMurtrey filed an amended verified petition on October 26, 2011, and Secure Energy filed an answer and counterclaim on November 15, 2011. (Id. at ¶¶ 27-28)

Secure Energy did not notify PIIC of Mr. McMurtrey's claim until May 4, 2011. (Id. at ¶ 29) Secure Energy stated that the reason for the delay in providing notice was that Secure Energy was unsure whether it had a claim. (Id. at ¶ 30) However, in 2009 Secure Energy's insurance broker, Pam Goessling, advised Secure Energy that there was little or no coverage but that the only way to determine coverage would be to submit a claim right away. (Id. at ¶¶ 31-33) Secure Energy did not instruct Ms. Goessling to submit a claim to PIIC. (Id. at ¶ 34) After receiving notice in 2011, PIIC refused coverage on the ground that the notice of the claim was untimely. (Petition ¶ 13, ECF No. 1-3)

Secure Energy then filed a Petition for Declaratory Judgment in state court, which the Defendant removed to federal court on September 21, 2011, on the basis of diversity jurisdiction. Secure Energy sought a declaration and judgment ordering PIIC to provide coverage, including indemnity and the costs of defense, in addition to other fees and expenses incurred. (Id. at ¶ 18) On September 19, 2012, PIIC filed a motion for summary judgment, arguing that no genuine issue of material fact exists with regard to Secure Energy's claims because it failed to timely notify PIIC of Mr. McMurtry's law suit, thus falling outside the terms of the insurance policies. Secure Energy, on the other hand, asserts that PIIC suffered no prejudice such that the untimely notice does not preclude coverage. On November 14, 2012, the parties presented oral arguments on the motion. The motion is now ripe for disposition.

## **Legal Standards**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must

set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324. Self-serving, conclusory, statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995).

"State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012). Missouri law requires that "'[t]he interpretation of the meaning of an insurance policy is a question of law.'" Capitol Indem. Corp. v. 1405 Associates, Inc., 340 F.3d 547, 549 (8th Cir. 2003) (quoting Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995)). In addition, the general rules set forth for interpreting contracts applies to interpreting insurance contracts. City of Maplewood, MO v. Northland Cas. Co., No. 4:11CV564 RWS, 2012 WL 2838219, at *2 (E.D. Mo. July 10, 2012) (citation omitted). "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." Krombach v. Mayflower Ins. Co., Ltd., 827 S.W.2d 208, 210 (Mo. 1992) (citation omitted). Courts must give plain meaning to the words in an insurance policy,

4

consistent with the parties' reasonable expectations, objectives, and intent. Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995). However, where a policy is ambiguous such that it is reasonably open to different construction, the provisions are construed against the insurer. Krombach, 827 S.W.2d at 210.

## Discussion

PIIC argues that Secure Energy untimely made a claim on the applicable policy. According to PIIC, Secure Energy should have submitted notice of claim under the "claims made" policy when Mr. McMurtrey demanded commissions, or at least within 60 days of the demand. Instead, Secure Energy did not submit a claim until May 4, 2011, more than 3 years after Mr. McMurtrey demanded commissions from Secure Energy's board of directors. Plaintiff Secure Energy, on the other hand, argues that, although it did not strictly comply with the notice provision in the liability policy, PIIC cannot deny coverage because PIIC has failed to establish prejudice. After consideration of the motion, responses, and the oral arguments, the Court finds that Defendant PIIC is entitled to judgment as a matter of law.

As stated by PIIC, the pertinent notice portion of the policy provides:

> In the event that a Claim is made against the Insured, the Insured shall, as a condition precedent to the obligations of the Underwriter under this Policy, give written notice to the Underwriter as soon as practicable after any of the directors, officers, governors, trustees, management committee members, or members of the Board of Members first become aware of such Claim, but, no later than 60 days after the expiration of this Policy, Extension Period, or Run-Off Policy, if applicable.

(Def.'s SOF ¶ 40; Def.'s Ex. R at 30, ECF Nos. 49 & 49-18)  Secure Energy acknowledges that it did not strictly comply with this provision and instead gave untimely notice of Mr. McMurtrey's claim.

However, Secure Energy states that the Missouri Supreme Court has consistently held that an insurer cannot deny coverage based on a breach of the policy requirements to provide notice of a claim or occurrence unless the insurer can demonstrate that the insured's failure to comply with the notice provision prejudiced the insurer.  In support, Secure Energy relies on several Missouri cases involving occurrence policies.  For instance, in <u>Weaver v. State Farm Mut. Auto. Ins. Co.</u>, 936 S.W.2d 818, 821 (Mo. 1997), the court held that where the insured delays notice, either through incapacity or substantial compliance, "the insurer must establish prejudice to forfeit the coverage to which the insured would otherwise be entitled."  That case involved an insured's attempt to recover under the uninsured motorist coverage of their automobile policy after a vehicle accident.  <u>Id.</u> at 819. The insured filed a worker's compensation claim for his injuries, believing that was the only recovery available to him because the other driver was uninsured.  <u>Id.</u>  New counsel later advised that the insured may be able to recover under the uninsured motorist provisions of the State Farm policy.  <u>Id.</u> However, the policy provided, "'The *insured* must give us or one of our agents notice of the accident or *loss* as soon as reasonably possible.'"  <u>Id.</u> (quoting policy).  The insurer attempted to establish prejudice in that the insurer did not have the ability to investigate the physical evidence at the scene; the delay in notice subsequently delayed the insurer's ability to obtain medical records;  and the insurer was unable to follow up with witnesses to the accident due to the insured's faded memory. <u>Id.</u> at 882.  The court found that, although the insurer could be able to establish that the

delay in notice was unreasonable and breached the insurance policy's terms, the insurer's showing of prejudice was merely speculative. Id. at 822.

The Missouri Supreme Court later clarified its holding in Weaver as pertaining to "occurrence" policies and not "claims made" policies. Wittner, Poger, Rosenblum, & Spewak, P.C. v. Bar Plan Mut. Ins. Co., 969 S.W.2d 749, 754 (Mo. 1998). In Wittner, the Bar Plan Mutual Insurance Company issued yearly professional insurance policies to the plaintiff law firm. Id. at 751. The policy contained a claims made clause, obligating the insurance company to pay damages as a result of claims made against the insured and reported to the insurance company during the policy period. Id. The policy excluded coverage where, before the policy effective date, an individual insured knew, or reasonably should have known, of a circumstance, act or omission that might be the basis of a claim. Id. at 752. The Missouri Supreme Court found that the policies at issue were "claims made" policies, as opposed to "occurrence" policy, which "generally provide[d] coverage for an event that occurs during the policy period, regardless of when a claim is asserted." Id. Claims made policies, on the other hand "are triggered by the date the claim is made upon the insured." Id. In arguing that the insurance company should cover the law firm for a malpractice claim, the plaintiff law firm stated that its failure to report the claim to the insurer did not result in prejudice, thus warranting coverage. Id. at 754. The court disagreed, holding that "[t]he prejudice requirement is generally not held to apply to claims made policies[,] reasoning that unlike an occurrence policy where the occurrence of a negligent act or omission during the coverage period triggers coverage, a claims made policy provides coverage when the act or omission is discovered and brought to the insured's attention, regardless of the occurrence date. Id. (citation omitted).

In the instant case, PIIC argues that it need not demonstrate prejudice, as the policy is a "claims made" and not "occurrence" policy. Secure Energy asserts, on the other hand, that the Missouri Supreme Court does not distinguish between "occurrence" policies and "claims made" policies in warranting that the insurer show prejudice where a claim is untimely. Secure Energy also contends that the court's analyses turn solely on the interpretation of the notice provision in each policy and not the type of policy. The undersigned disagrees.

As stated above in the Wittner case, the Missouri Supreme Court distinctly held that an insurer is not required to show prejudice in a "claims made" policy. Several Missouri state and federal courts have followed this reasoning, including the court in Landry v. Intermed Ins. Co., 292 S.W.3d 352, 356 (Mo. Ct. App. 2009). In that case, the court found, "[c]laims made policies place special reliance on notice. Notice must be given to the insurer during the policy period. If the insured does not give notice within the contractually required policy period, there is simply no coverage under a claims made policy, whether or not the insurer was prejudiced." Id.; see also City of Maplewood, Missouri v. Northland Cas. Co., No. 4:11CV564 RWS, 2012 WL 2838219, at *5 (E.D. Mo. July 10, 2012) (noting that in Wittner, the Missouri Supreme Court recognized a valid distinction between claims made and occurrence policies and holding that the insurer need not demonstrate that it was prejudiced by the insured's failure to provide timely notice under the claims made policy); Lexington Ins. Co. v. Integrity Land Title Co., Inc., 852 F. Supp. 2d 1119, 1133 (E.D. Mo. 2012) (finding that in a claims made policy, where there is no timely notice, no coverage exists, and the insurer need not prove prejudice) (citations omitted); Grissom v. First Nat'l Ins. Agency, 371 S.W.3d 869, 874-79 (Mo. Ct. App. 2012) (noting that in a claims made policy coverage is triggered

upon discovering and reporting the act or omission, reversing summary judgment in favor of the insured, and granting summary judgment in favor of the insurer).

Based upon Missouri precedent, the undersigned finds that PIIC is not required to demonstrate that it was prejudiced by Secure Energy's failure to provide timely notice under the claims made policies. Secure Energy's failure to give the requisite notice precludes it from coverage. Lexington Ins. Co. v. Integrity Land Title Co., Inc., 852 F. Supp. 2d 1119, 1133 (E.D. Mo. 2012). Because there is no genuine dispute that Secure Energy did not provide timely notice of Mr. McMurtrey's claim within the reporting period under the claims made policies, PIIC is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Philadelphia Indemnity Insurance Company's Motion for Summary Judgment (Doc. No. 47) is **GRANTED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this   16th   day of May, 2013.